IRVING, J.,
DISSENTING:
¶ 52. I believe that the majority errs in affirming the chancellor’s decision to modify the custody provisions of the original judgment, which granted Melissa Betts physical custody of Ben, the parties’ minor son. Therefore, I respectfully dissent. I would reverse and render the judgment transferring Ben’s custody from Melissa to Barry Massey, as I find the evidence totally insufficient to support a finding that, since the initial judgment, a material change in circumstances has occurred that adversely affects Ben’s well-being. In fact, as I will explain, the chancellor made no attempt, on the evidence presented, to determine if a material change in circumstances had occurred.
¶ 53. The record reflects that the chancellor found that a material change in circumstances had occurred because “both parties filed pleadings, alleging that a material change in circumstances adverse to the child had occurred.” The chancellor further stated:
They disagreed as to the application of the best interest test, both agreed that a material change had occurred and that it adversely affected the child. As to the material change that adversely affects the child, the Court concludes that Ben already spends most nights with his father and step-mother which the Court finds to be a de facto change of custody with the mother’s consent. In addition, Melissa’s work hours of the past two (2) weeks have changed to a more conventional 9:00 a.m. to 5:00 p.m. Before that time, she worked from 6:00 p.m. to 2:00 a.m. which was not a schedule conducive to raising a small child as a single parent. Finally, Melissa now finds herself four (4) months pregnant by a man she began dating six (6) months ago. She admits that on occasions she and her boyfriend have allowed Ben to sleep in bed with them which the Court finds to be further evidence of a material change that adversely effects [sic] this child.
¶ 54. The record reveals that Barry did not affirmatively plead in his counter-complaint for custody and child support that a material change in circumstances that had adversely affected Ben had occurred. In her complaint seeking a citation of contempt against Barry, and for other relief, Melissa alleged that “[t]here has been a material change in circumstances adverse to the minor child and it is in the best interest of the child that Melissa should have complete custody of the child.” In his answer to Melissa’s complaint, Barry admitted that there had been a material change in circumstances adverse to Ben, but denied that it was in Ben’s best interest for complete custody to be given to Melissa. While Melissa did not specify what the material change was, it is crystal clear that the change that she was referring to was Barry’s refusal to return Ben to her on March 18, 2008, after she had asked him to baby-sit Ben while she was at work. Therefore, it cannot be legitimately argued that the parties agreed that Barry’s refusal to return Ben to Melissa was the material change, adversely affecting Ben, that warranted modification of the joint custody provision, because there is no doubt that Barry did not intend to agree that his own actions had adversely affected Ben.
*614 ¶ 55. In McSwain v. McSwain, 943 So.2d 1288, 1292(¶ 15) (Miss.2006) (quoting Mabus v. Mabus, 847 So.2d 815, 818(¶ 8) (Miss.2003)), our supreme court held that:
In a modification proceeding, the burden is on the non-custodial parent to prove by a preponderance of the evidence: “(1) that a substantial change in circumstances has transpired since issuance of the custody decree; (2) that this change adversely affects the child’s welfare; and (3) that the child’s best interests mandate a change of custody.”
Further, chancellors should consider the totality of the circumstances when making this determination, and if, by looking at the totality of the circumstances, it can be said that a change has occurred: “the court must separately and affirmatively determine that this change is one which adversely affects the children.” Mabus, 847 So.2d at 818(¶ 8) (quoting Bredemeier v. Jackson, 689 So.2d 770, 775 (Miss.1997)).
¶ 56. It is exceedingly clear, from the quoted portion of the chancellor’s opinion, that he simply accepted Melissa’s representation, and Barry’s affirmance of that representation, that a material change in circumstances that adversely affected Ben had occurred. Since Barry was seeking a change of the custody provision, it was incumbent upon him to affirmatively plead and prove that a material change in circumstances had occurred and that this change had adversely affected Ben. He did neither.
¶ 57. A casual perusal of Barry’s counter-complaint leaves no doubt that he did not plead that a material change in circumstances had occurred. Therefore, procedurally, he did not place himself in a position where he could be awarded the relief that he was requesting. This fact aside, the record is devoid of any evidence that a material change in circumstances had occurred. As stated, the chancellor did not make an independent finding that a material change in circumstances had occurred. I have already discussed the fallacy in the chancellor’s assertion that the parties, by their pleadings, mutually agreed that a material change in circumstances had occurred. After erroneously finding that the parties had agreed that a material change in circumstances had occurred, the chancellor then compounded his errors. As stated, the chancellor opined:
As to the material change that adversely affects the child, the Court concludes that Ben already spends most nights with his father and step-mother which the Court finds to be a de facto change of custody with the mother’s consent. In addition, Melissa’s work hours of the past two (2) weeks have changed to a more conventional 9:00 a.m. to 5:00 p.m. Before that time, she worked from 6:00 p.m. to 2:00 a.m. which was not a schedule conducive to raising a small child as a single parent. Finally, Melissa now finds herself four (4) months pregnant by a man she began dating six (6) months ago. She admits that on occasions she and her boyfriend have allowed Ben to sleep in bed with them which the Court finds to be further evidence of a material change that adversely effects [sic] this child.
(Emphasis added). In the above passage, it is clear that the chancellor finds that Melissa’s allowing the child to spend extra time with his father, while she works to support the child and herself, has adversely affected the child. This is distorted reasoning. Allowing a child to spend lots of time with one of his natural parents can never be deemed to be an adverse effect on the child, unless the parent with whom the child is spending the extra time is unfit to care for the child. Surely, the chancellor was not finding that Barry was unfit to spend the extra time with Ben. That being *615 the case, how can it be legitimately said that Melissa’s allowing Ben to stay with Barry, while she worked, adversely affected Ben?
¶ 58. Then the chancellor finds that Melissa’s allowing Ben to sleep with her and her boyfriend on one or two occasions is further evidence of a material change that adversely affects Ben. This finding is equally baffling, as there is absolutely no evidence that Ben was exposed to any unsavory activity between Melissa and her boyfriend during the one or two nights that he was allowed to sleep with them. Ben sleeps regularly with Barry and his wife. However, the chancellor did not find fault with that arrangement. Is the difference a moral one? If so, is this not an improper weighing of the Albright factors, as the moral fitness of the parent is only one factor that must be considered along with the others? A custody decision cannot be based on one factor. No one factor is dominant. It is sufficient to say that the record contains no evidence of any adverse effect on Ben as a result of any of the choices made by Melissa in her personal life. Moreover, the sleeping incident occurred only once or twice, while the sleeping arrangement between Ben, his father, and his father’s wife is ongoing.
¶ 59. In his discussion of the material change in circumstances that had adversely affected Ben, the chancellor did not discuss the one incident regarding the bruises that were found on Ben’s buttocks. Therefore, I see no need to address that incident in any detail. There is absolutely no proof in the record as to who was in charge of Ben when the bruises occurred. Therefore, it would be inappropriate to attempt to assess fault with regard to the braises. Suffice it to say that the weight of the evidence does not point any more toward Melissa than it does toward others who had been in charge of Ben within the twenty-four hour period prior to the braises being discovered. Further, there is no evidence that this one incident reflects any kind of a pattern of physical abuse, or that it will ever occur again.
¶ 60. Finally, I must say that the chancellor’s decision to penalize Melissa for working to support herself and Ben, and for allowing Ben to spend time with his father while she worked, sends the wrong signal to single parents and is not in the best interests of their minor children. Believing that she/he may ultimately be penalized for doing so, a single, working parent who is given custody of her/his child may be unwilling to allow the child to spend any more time with the non-custodial parent than is required in the custody order. This would be a normal, natural, and understandable reaction unless the custodial parent did not care about maintaining custody of her/his child. It is always in the best interests of minor children to be allowed to spend as much time as possible with their parents and especially with a caring, non-custodial parent. When parents are separated and attempting to raise their children together, the courts should be careful never to do anything that may inhibit that process.
¶ 61. For the reasons presented, I dissent.
GRIFFIS, BARNES AND ISHEE, JJ, JOIN THIS OPINION.